Mr. Sekhon, good to see you. Good to see you again, Your Honor. I saw Mr. Sekhon yesterday. He argued a case yesterday, and I know you had asked if we could move them to the same day, and I think that was denied just because we had different panels, which you probably didn't know at the time. But that was the reason for not accommodating you, so I'm sorry for that. No. Actually, I thank the Court for not doing that. I don't think I would have been able to do two days in a row. That's true. Not many people do two arguments on the same day, and certainly it's trying. So anyway, we're here for this one today, so you've got two minutes that you reserve for rebuttal. So that gives you then three minutes to start, and you may proceed. Your Honor, I'm John Sekhon. I am pro se. Yesterday, I wrote the briefs, excuse me, if they were a little crude. I did not go to law school when the University of Pennsylvania dean of students said, law school dean of students said that if you're going into the law to seek justice, leave now. He says the purpose of the law is to keep us from killing each other, no more, no less, period. He says if you can't represent someone that's guilty, leave now. You're not going to be a good lawyer. I left, and I went into private business. This is not a domestic, and one of the other historical contents, the law is to keep us from killing each other, but they discovered in the French Revolution the law is not enough. You have to have due process of law, otherwise it doesn't work. And so our founding fathers examined the French Revolution, determined that due process is as important as the law. This is not a domestic violence, domestic relations case. This is a civil rights case about ongoing due process in ADA violations. Title II of the ADA is there to protect due process. The state courts created a constitutional catch in 22, making it possible for me to see my child in the district court aired by not intervening. I'm a fifth parent. I have no criminal record. I have not seen my child for 1,313 days, and I have no rights to seek modification of custody. That's due process error, period. That's constitutional violation, period. May it please the court, this is not because I'm an unfit parent. This is because I do not pose a risk of injury to the child. DCF ruled, the state ruled I do not pose a risk of injury to my child. I have been trapped in a series of cascading constitutional violations. My arguments focus on two fundamental errors. First of all, I was accorded an ADA accommodation because of a heart condition. A heart condition that arose, I'm going to run short, I'm sorry. A heart condition that arose because I was falsely arrested nine times in 18 felonies and three misdemeanors, and I stood trial on 152 years and prevailed on all counts. However, I was ran to ground in the custody action. Twenty-one days was allowed the mother to present their case, and I had a heart attack. And so I was granted an ADA accommodation and half-day trials, and then Judge Wynn, administrative order by Judge Dianne, half-day trials. Judge Wynn then ordered all-day trials. I attended all-day trials, so I had a heart attack. And when I refused to attend all-day trials because I had an ADA accommodation and half-day trials, she terminated trial and ruled against me. There are other things that have come to light that I'm going to have to bring to the attention of this Court. It appears that Judge Wynn has subsequently filed affidavits, criminal affidavits, of cyberbullying, cyberstalking, and cyberthreatening in reference to the case Sacon v. Sacon. The problem is it wasn't me. So this is not a judicial act. This is a failure to follow a nondiscretionary administrative order. But after that was the first case, which is now 25-812, I sued Judge Wynn for a failure to abide by the ADA. However, after I sued her, she created unconstitutional barriers to my modification of the orders. In other words, she took custody from me and created unconstitutional barriers. It's those unconstitutional barriers we are here today on. First of all, therapeutic supervised visitation agency, a mythical entity that does not exist in Connecticut law. No definition. I have to use an agency at a cost that does not exist. That's a barrier. I mean, we're kind of running into, we're running over time now. But, I mean, one of the points made by the state is that you've, I mean, they argued that this is a, you know, domestic relations case. And there's a doctrine that says we don't take those kinds of cases. And you didn't seem to really engage with that. The district court ruled on that basis. And your brief doesn't discuss it. Your Honor, the district court ruled that the appellate court took up the due process violation on appeal. Title II due process violation is solely square in federal court because the Congress of the United States said we don't trust the states on the issue. And so, therefore. My point is that the district court abstained, right, on the domestic relations abstention doctrine. That was one of the grounds that it relied on, but you didn't. I said because this is not a domestic relations. I'm not asking this court to award custody. I'm asking this court to order due process to continue. I've been denied due process. I was. This is a waiver argument. Did you sufficiently develop this argument in your brief? I'm pro se, and I think in my reply brief I answered that question. The point of the matter is I keep on saying this is a due process violation. Title II, American Disabilities Act, is solely due process to ensure that the disabled have adequate safeguards of due process in court. All right. Well, let's hear from your adversary, and then you have two minutes for rebuttal. Thank you. Ms. Nunley. So, you may proceed. You have five minutes. Good afternoon, and may it please the Court. Ms. Connecticut Assistant Attorney General Alma Nunley, on behalf of the State of Connecticut, Judge Wynn O'Dowd, Judge Diana, and Judge Nastry. I think it's important to note that this is not a domestic relations case. I think it's important to make clear that this case is one of many that Mr. Sakon has brought arising from the Connecticut Superior Court custody trial. And in this case, what he's challenging is the final custody judgment and certain post-judgment orders based on that judgment, pursuant to the ADA, Section 1983, and the Connecticut Constitution. Despite Mr. Sakon's continued attempts to cast his claims and request of relief as prospective, in the amended complaint, Mr. Sakon expressly seeks, and I quote, declaratory and injunctive relief against decree that violates ADA. And the decree discussed continually in the amended complaint is the custody judgment itself. In order to do that, the Court would need to find that the State court's custody judgment is void, and any post-judgment orders effectuating it are also void. The District Court properly dismissed these claims pursuant to the 11th Amendment because they do not fall under Ex parte Young and also judicial immunity. But as this Court noted, this Court need not even reach those grounds for dismissal because in its opening brief, Mr. Sakon failed to challenge the District Court's separate conclusion that the domestic relations abstention doctrine compelled dismissal of the case. Therefore, he has waived any challenge to the District Court's judgment. So the forefront is really what you're saying, more than waived, right? We make that distinction. But do you think it was an intentional decision or it was an oversight? I can't ascribe motive to it. However, Mr. Sakon, as he describes himself, he's a pro-State litigant, but he's an experienced pro-State litigant. As you noted, he argued in this Court yesterday. He argued in the Connecticut Appellate Court last week. He has multiple other appeals pending, including another appeal that challenges the custody trial in this case, in the underlying case. And so Mr. Sakon should be aware that if he does not challenge a ground, that he may not have an opportunity to do so in his reply brief. In addition, the arguments in the reply brief, beyond coming too late, are also not supported by the cases cited, to the extent that the name cases even appear at the citations provided, which is an additional reason not to consider the arguments in the reply related to the domestic relations abstention doctrine. And I understand that Mr. Sakon here frames this case as a due process case, but domestic relations abstention doctrine is not based on the claims that are raised in the Federal court, but on the relief that he's seeking. And that relief is to invalidate at least portions of the custody judgment and the post-judgment orders that rely on that judgment. And therefore, for this reason, the Court should affirm dismissal of this case, and I'm happy to answer any questions that the Court may have. No? Okay. So thank you, Ms. Medley. Mr. Sakon, you have two minutes for rebuttal. Just one second, Your Honor. Okay.  Your Honor, the issue here is the allegation of retaliation. Now we have motive for retaliation. You don't understand this case until you go to the Family Circus, Connecticut Family Court website, Paul Boyne. The point of the matter is an affidavit's Judge Wynn sort of accused me of being the cyberstalker. I was not. A whole task force investigated that issue, innocent, had nothing to do with it. And the problem is that's what happens when judges are attacked on the Internet. I submitted an affidavit proving I complied with the Court's orders. There are barriers. I cannot have supervised visitation until I'm treated for my narcissism. That's interesting. ADA protects narcissism. The Connecticut Constitution protects narcissism. Excuse me if I'm a narcissist. Protects narcissism? I'm not sure I'm following. Well, why is narcissism a threat to people? It's like saying a Republican's a threat to people. It's like saying a Democrat is a threat to people. I have a right to believe I'm not a narcissist. I had two neuroscientists. I was declared a narcissist by Judge Wynn predicated upon a 30-minute true-false-question test, and I had two neuroscientists do full workup on me, multi-day workups, and testify, neuropsychologists, that is, testified, board-certified neuropsychologists testified that I was not a narcissist, but that is not admissible because it's a collateral attack on the decision. That's Judge Diana. A collateral attack on Judge Wynn's decision. And so, therefore, since you haven't met the motion for modification, which means I have to exercise a year's worth of therapy before I can file for a motion for modification, we can't come back and question whether the original ruling of the Court, based upon medical and health conditions, had been changed. So Judge Allure denied me on December 2, 2025, denied me parenting time in a one-sentence order stating, I haven't been treated for narcissism. I went to eight multiple board-certified psychiatrists, licensed psychologists, neuropsychologists, and therapists at state-licensed agencies to treat narcissism. I went to eight. I called everybody's bluff. I went to 50 different sessions to treat a therapist's condition that I did not have in an attempt to see my child.  Denied. That's due process error. Denied. So we're over time. I'll give you one minute to finish this thought, but then we'll wrap up. But we have you agreed. Okay. What I'm asking you to do, I'm asking you to do a custody decision. I'm asking you to remedy the family violations of due process because trial terminated because I exercised the ADA. I was not allowed to complete my case. I should be allowed to complete my case, even though the decision came down. That's what I'm asking you to do. I'm not asking you to award me custody. I'm asking you to order the court to have a due process hearing because I was denied that hearing. Are they shielded by judicial immunity? No. No. ADA does not shield you by judicial immunity. Title II does not shield you. It's an administrative order. Judge Diana was sued because Judge Diana was the judge that was presiding judge, and under the Connecticut Code of Judicial Conduct, he ordered the accommodation, but he failed to order Judge Wynn to abide by the accommodation after she violated it. Is it an ongoing violation? Yeah. I haven't seen my kid. I'd like to see my kid. No. Look, we understand those points and certainly the difficult family circumstance. We will reserve decision. If I may add one thing, Your Honor, I think the most important issue here is the constitutionality of paying for the right to see your child. If the parent-child relationship is constitutional, then you cannot require me to pay to exercise that right, and if there's anything I would think is the most important part of this case, that's when I'd bring the cert to the Supreme Court. You can't force me to pay for the right to exercise my parent-child relationship, particularly when I do not pose a risk of injury to the child. Thank you, Mr. Seacosta. Thank you, Ms. Nunley.